**In re James L. PARIS, Debtor.**

**James L. Paris, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 3:05–bk–09477–JAF.**
**Adversary No. 3:05–ap–00264–JAF.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 13, 2006.

James L. Paris, Daytona Beach, FL, pro se.

Carol Koehler Ide, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon Defendant's Motion for Summary Judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment, Supplement to Defendant's Motion for Summary Judgment, and Plaintiff's Request to Defendant's Supplement for Summary Judgment. Upon the undisputed facts and the arguments of the parties, the Court finds it appropriate to grant Defendant's Motion for Summary Judgment.

The following facts are undisputed.[1] Plaintiff was the president and registered agent of James L. Paris Financial Services, Inc. (the "corporation") and owned 90% of the corporation, which he incorporated in 1991. (Reqs. 2, 3, and 4.) Plaintiff had the authority to hire, fire and manage employees of the corporation and in fact hired, fired and managed employees of the corporation. (Reqs. 5, 6.) Plaintiff had the authority to direct payment of the corporation's bills and expenses. (Req. 7.) Plaintiff had authority to deal with the corporation's suppliers and clients and in fact dealt with the corporation's clients. (Reqs. 9, 10.) Plaintiff had the authority to negotiate the corporation's large purchases, contracts, and loans. (Req. 11.) Plaintiff had the authority to guarantee or co-sign corporate bank loans and/or borrowings. (Req. 13.) Plaintiff had the authority to open and close corporate bank accounts and in fact opened a corporate bank account after June, 2002. (Reqs. 14, 15.) Plaintiff was an authorized bank signatory for the corporation. (Reqs. 16, 31.)

Plaintiff signed checks on the corporation's checking accounts beginning in June, 2002. (Reqs. 19, 32.) Plaintiff authorized the issuance of corporate payroll checks. (Req. 18.) Beginning in June 2002, Plaintiff signed corporate payroll checks. (Reqs. 17, 32.) Plaintiff had authority to make and authorize deposits to corporate bank accounts. (Req. 20.) After June 2002, Plaintiff signed Federal corporate payroll tax returns. (Req. 22.) Plaintiff had authority to make Federal corporate payroll tax deposits. (Req. 23.) Plaintiff had authority to determine the corporation's financial policy. (Req. 24.)

Plaintiff hired Carmen Paris, his brother, to work at or for the corporation. (Req. 29.) Carmen Paris was the vice-president of the corporation. (Req. 26.) Carmen Paris was an authorized bank signatory for the corporation and signed checks on the corporation's account until he left employment at the corporation in June 2002. (Reqs. 27, 30.) Carmen Paris signed the Employer's Quarterly Federal Tax Returns for the corporation for the periods ending March 31, 2000, June 30, 2000, December 31, 2000, March 31, 2001, June 30, 2001, and September 30, 2001. (Req. 33.) Plaintiff signed the Employer's Quarterly Federal Tax Returns for the corporation for the periods ending March 31, 2002 and June 30, 2002. (Req. 34.)

On June 8, 2002 Plaintiff became aware the corporation was delinquent in its payroll tax obligations beginning with the tax period ending June 30, 2000.[2] After becoming aware of the delinquency, Plaintiff continued to write check after check to creditors other than the Internal Revenue Service. Plaintiff wrote the following

---

1. Defendant served its first request for admissions to Plaintiff on February 1, 2006. On April 14, 2006 Plaintiff filed his first response to the request for admissions in which he admitted the following facts.

2. Defendant stipulated to this fact in open court on June 6, 2006 at the hearing on Plaintiff's Motion to Compel.

checks on the corporation's account at AmSouth Bank after June 8, 2002:

June 13, 2002—Century Small Business—$250.00 (Bates No. 265 and 266.)

June 17, 2002—Carol Brown—$1,051.37 (Bates No. 267 and 268.)

June 17, 2002—State Farm Insurance—$129.13 (Bates No. 269 and 270.)

June 20, 2002—Benjamin Moore—$1,000.00 (Bates No. 273 and 274.)

June 26, 2002—Pappas Law Firm—$900.00 (Bates No. 275 and 276.)

June 26, 2002—Benjamin Moore—$250.00 (Bates No. 277 and 278.)

July 10, 2002—Charles Sizemore—$556.47 (Bates No. 291 and 292.)

July 19, 2002—$100.00 (Bates No. 279 and 280.) [3]

July 30, 2002—$100.00 (Bates No. 283 and 284.) [4]

July, 2002—OC Fund—$184.80 (Bates No. 289 and 290.)

August, 2002—$200.00 (Bates No. 293 and 294.) [5]

August 1, 2002—Sharon Paris—$112.35 (Bates No. 285 and 286.)

August 2, 2002—Carol Brown—$1,051.37 (Bates No. 287 and 288.)

August 6, 2002—Century Small Business—$250.00 (Bates No. 295 and 296.)

August 7, 2002—Sharon Paris—$100.00 (Bates No. 297 and 298.)

August 12, 2002—Cathy Tuttle—$350.00 (Bates No. 299 and 300.)

August 16, 2002—Carol Brown—$1,051.37 (Bates No. 301 and 302.)

August 29, 2002—legal fees—$1,500.00 (Bates No. 303 and 304.).

(Ex. C. to Def.'s Mot. for Summ. J.)

On April 9, 2004 Defendant assessed, pursuant to § 6672 of the Internal Revenue Code, trust fund recovery penalties ("Trust Fund Penalties") against Plaintiff for the payroll taxes withheld from the wages of employees of the corporation but not paid over to the Internal Revenue Service during the following periods for the following amounts:

| | |
|---|---|
| June 30, 2000 | $ 5,754.03 |
| September 30, 2000 | $13,510.39 |
| December 31, 2000 | $ 7,359.09 |
| March 31, 2001 | $ 7,354.15 |
| June 30, 2001 | $ 4,628.43 |
| September 30, 2001 | $ 3,629.09 |
| December 31, 2001 | $ 540.22 |
| March 31, 2002 | $ 6,212.16 |
| June 30, 2002 | $ 4,619.68 |
| September 30, 2002 | $ 1,410.24 |
| December 31, 2002 | $ 198.63 |

(Exs. 2 and 3 to Def.'s Mot. for Summ. J.)

On September 2, 2005, Plaintiff filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On that same day Plaintiff filed this adversary proceeding. Plaintiff seeks a determination that his liability for the Trust Fund Penalties is dischargeable as well as a determination that he is not liable for the Trust Fund Penalties. Defendant filed the Motion for Summary Judgment, contending that there is no genuine issue of material fact as to: 1) Plaintiff's liability for the Trust Fund Penalties and 2) the dischargeability of the Trust Fund Penalties in Plaintiff's bankruptcy case. Plaintiff filed a response, contending, among other things, that Carmen Paris had complete control over the corporation's finances, that Carmen Paris embezzled millions of dollars from the cor-

---

3. Although the payee of this check is illegible, the payee is not the Internal Revenue Service.

4. Although the payee of this check is illegible, the payee is not the Internal Revenue Service.

5. Although the first name of the payee of this check is illegible, the payee's last name is Paris.

poration, and Carmen Paris concealed from Plaintiff that the payroll taxes were not being paid.

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2005)(incorporated by Fed. R. Bankr.P. 7056). A moving party bears the initial burden of showing a court that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by " 'showing'—that is, pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. In determining whether the movant has met this initial burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997)(citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993)). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a moving party satisfies this burden, then a nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* Therefore, the burden is on Defendant to show there is no genuine dispute over whether Plaintiff is liable for the Trust Fund Penalties assessed against him pursuant to § 6672 of the Internal Revenue Code. Additionally, Defendant bears the burden of proving that the liability is non-dischargeable.

■ A trust fund recovery penalty arises when a corporation fails to pay over to the Internal Revenue Service taxes that have been withheld from the wages of its employees. Corporate employers hold these funds in trust for the United States, and if the corporation fails to pay those withheld taxes over to the Internal Revenue Service, certain corporate officials can be held personally liable for a penalty equal to the amount of withheld taxes. *See* 26 U.S.C. § 6672 (2005). Personal liability under § 6672 is imposed upon the person or persons who (1) were responsible for ensuring that the trust fund taxes were collected, accounted for or paid over to the United States and (2) willfully failed to discharge that duty. *See Malloy v. United States,* 17 F.3d 329, 331 (11th Cir. 1994).

■ Responsibility in the context of § 6672 "is a 'matter of status, duty, and authority.' " *Williams v. United States,* 931 F.2d 805, 810 (11th Cir.1991)(quoting *Mazo v. United States,* 591 F.2d 1151, 1156 (5th Cir.1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979)). Courts "have generally taken a broad view of who constitutes a responsible person."

*Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir.1990). The Eleventh Circuit has recognized a number of factors relevant in determining whether an individual has the status, duty or authority of a responsible person. Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, the ownership of stock, and the ability to hire and fire employees. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987). In the context of the broad definition utilized by the Eleventh Circuit, a review of the undisputed facts in this adversary proceeding establishes that Plaintiff was a responsible person as that term is set forth in § 6672; he held the corporate office of president, he had authority to direct payment of the corporation's bills and expenses, and he owned 90% of the corporate stock, among other indicia of responsibility.[6]

 Once it is established that an individual is a responsible person, the burden of proving a lack of willfulness falls on that individual. *See Smith*, 894 F.2d at 1553. The willfulness requirement of § 6672 is satisfied if the responsible person has knowledge of payments to other creditors after he becomes aware of the failure to remit the withheld taxes. *See Thosteson v. United States*, 331 F.3d 1294, 1300 (11th Cir.2003)(citing *Williams*, 931 F.2d at 810). It means simply that the responsible person had knowledge of the tax delinquency and "acquiesced in [the company's] continued payment to other creditors while the taxes remained unpaid." *McDonald v. United States*, 939 F.2d 916, 919 (11th Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). "[B]ad motive or evil intent" need not be shown. *Mazo*, 591 F.2d at 1154. Additionally,

> [e]ven if a 'responsible' person is unaware that withholding taxes have gone unpaid in past quarters, a responsible person who becomes aware that taxes have gone unpaid in past quarters in which he was also a responsible person is under a duty to use all 'unencumbered funds' available to the corporation to pay back those taxes. This duty extends not only to funds available to the corporation at the time the responsible person becomes aware but also to any unencumbered funds acquired thereafter. If the responsible person fails to use such unencumbered funds to satisfy the past unpaid liability, he is deemed personally liable for the taxes that went unpaid in the past while he was responsible. The responsible person deemed liable for the unpaid liability of past tax quarters is considered to have 'willfully' failed to pay over the taxes for those past quarters, even though he was unaware at the time the taxes were going unpaid.

*Thosteson*, 331 F.3d at 1300–1301 (internal citations omitted).[7]

Although at least one other circuit court of appeals has expressly limited such a responsible individual's liability to the ex-

---

6. Plaintiff suggests that he is not liable for the trust fund penalties because his brother was in charge of the day to day operations of the corporation and embezzled money from the corporation. Plaintiff is not relieved of his responsibility by delegating day-to-day management and check writing duties. *See Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir.1989); *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir.1992).

7. "Funds are encumbered only where the taxpayer is legally obligated to use those funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." *United States v. Kim*, 111 F.3d 1351, 1359 (7th Cir.1997).

tent of the unencumbered funds available or acquired after the time at which the responsible person becomes aware of the outstanding liability, *see United States v. Kim*, 111 F.3d 1351, 1359 (7th Cir.1997), the Eleventh Circuit has not done so. The District Court of the Middle District of Alabama held that a taxpayer was liable for a § 6672 trust fund penalty in *Thosteson v. United States*, 182 F.Supp.2d 1189 (M.D.Ala.2001). There, the Internal Revenue Service imposed a § 6672 penalty against Thosteson, the vice-president of a corporation which owed withholding taxes. *Id.* at 1191. Thosteson became aware of outstanding tax liabilities for previous quarters during which he was a responsible person. *Id.* at 1192. After he became aware of the outstanding liability, Thosteson wrote a number of checks to other creditors. *Id.* The checks entered into evidence were in the amounts of $1,000.00, $280.00, $923.00 and $45,000.00. *Id.* The judgment entered against Thosteson was $1,293,427.09 (and $1,560,235.45 with interest from the date of the assessment). *Thosteson*, 331 F.3d at 1296. The district court did not make a finding that the funds available to the corporation at the time Thosteson became aware of the outstanding liability coupled with the funds acquired thereafter exceeded the amount necessary to satisfy the outstanding liability. Nonetheless, the district court held that Thosteson's failure to pay the taxes was willful. *Id.* at 1194 (noting that Thosteson's "preference for other creditors over the United States, given his knowledge both of [the corporation]'s tax situation and his understanding of the duty of responsible persons to pay withholding taxes, establishes as a matter of law that Thosteson's failure to pay was willful"). The Eleventh Circuit affirmed, stating "[e]ven giving Thosteson the benefit of the doubt that he was merely paying other creditors in order to keep the company going and preserve its ability to repay the tax debt, he is still liable under the law of this Circuit." *Thosteson*, 331 F.3d at 1296.

After Plaintiff became aware on June 8, 2002 of the outstanding liabilities for the last three quarters of 2000, all four quarters of 2001, and the first quarter of 2002 and while the withholding taxes during the second, third, and fourth quarters of 2002 accrued, he wrote numerous checks to other creditors, including suppliers, employees, and even attorneys.[8] Such action constitutes willfulness as a matter of law. Even assuming that Plaintiff was paying other creditors in order to keep the company going and preserve its ability to repay the tax debt, he is still liable in this Circuit. *See Thosteson*, 331 F.3d at 1300. Accordingly, the Court finds it appropriate to enter summary judgment in Defendant's favor as to Plaintiff's liability for the Trust Fund Penalties assessed for the periods ending June 30, 2000 through December 31, 2002.

Defendant asserts as a matter of law that Plaintiff's § 6672 payroll tax liabilities are non-dischargeable. A chapter 7 discharge relieves a debtor of all liabilities except as provided in Section 523 of the Bankruptcy Code. 11 U.S.C. § 727(b) (2005). Section 523 excepts from dis-

---

**8.** In a pleading filed on June 6, 2006 titled Plaintiff's Supplement to Oral Arguments of June 6, 2006 Hearing, Plaintiff asserts that "the [corporation] had no unencumbered funds due to the contingent liability of investment management services that had been paid for, but not received by its clients." Plaintiff fails to allege that he was *legally* obligated to use the funds for a purpose other than satisfying the liability to the Internal Revenue Service and that such legal obligation was superior to the interest of the Internal Revenue. The Court finds that there is no dispute that the funds were unencumbered.

charge "any debt-(1)for a tax ... (A) of the kind and for periods specified in ... section 507(a)(8)" of the Code. 11 U.S.C. § 523(a)(1)(A) (2005). One of the tax debts specified in Section 507(a)(8) is "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C) (2005). This exception from discharge has been held to include the "trust fund" portion of payroll taxes, or "responsible officer" penalties, for which a debtor is liable under the provisions of Section 6672 of the Internal Revenue Code. *United States v. Sotelo*, 436 U.S. 268, 274–275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978). Accordingly, Defendant met its burden of proving that the taxes are non-dischargeable as a matter of law. Upon the foregoing, it is

**ORDERED:**

1. Defendant's Motion for Summary Judgment is granted. Plaintiff is liable for the penalties assessed against him pursuant to § 6672 of the Internal Revenue Code for the periods ending June 30, 2000 through December 31, 2002.

2. Plaintiff's liability for the penalties assessed against him pursuant to § 6672 of the Internal Revenue Code for the periods ending June 30, 2000 through December 31, 2002 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A).

3. All other pending motions in this adversary proceeding are denied as moot.