[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 11, 2002
THOMAS K. KAHN
CLERK

No. 01-14520

D.C. Docket No. 00-00622-CV-T-S

PETER THOSTESON,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Counter-
Claimant-Appellee,

QUENTIN GARNER UMPHREY, et al.,

Counter-Defendants.

Appeal from the United States District Court
for the Middle District of Alabama

**(September 11, 2002)**

Before EDMONDSON, Chief Judge, CARNES and SILER[*], Circuit Judges.

SILER, Circuit Judge:

Plaintiff Peter Thosteson filed this action against the United States seeking a refund of his partial payment of the tax penalty assessment made against him pursuant to 26 U.S.C. § 6672, based on the failure of the company for which he worked to submit payroll withholding trust fund taxes (the "taxes"). A trial was held, and the jury returned a verdict in his favor for all tax quarters at issue. Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the district court granted judgment as a matter of law for the Defendant United States of America (the "government"), finding Thosteson liable for all tax quarters at issue. Thosteson appeals that decision. We affirm.

## I.

In response to an Internal Revenue Service (IRS) assessment, Thosteson filed this action against the government. He seeks a refund of his partial payment of the taxes from the third quarter of 1994 through all four quarters of 1995 (until November

---

[*] Honorable Eugene E. Siler, Jr., U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

2

28, 1995), which his employer, Lorac, Inc., failed to remit to the government. The judgment amounts to $1,293,427.09.[1]

Prior to submission of the case to the jury, the government made a motion for judgment as a matter of law. The court reserved decision on that motion. After the jury began deliberations, it returned with a question: "If the jury were to find that plaintiff was a responsible person for only following quarters, third quarter of 1995, fourth quarter of 1995, but was not willful in the failure to pay taxes of said quarters, will Mr. Thosteson be assigned a penalty?" The court answered that an individual must be both "responsible" and "willful" to be liable for the penalty. Subsequently, the jury returned a verdict in favor of the taxpayer. For the last two quarters of 1994 and the first two quarters of 1995, the jury found that Thosteson was not a responsible party. For the third and fourth quarters of 1995, the jury found that Thosteson was a responsible party, but his conduct in not paying the taxes was not willful.

The government renewed its request for a judgment as a matter of law. The court granted that motion, overturning the jury verdict and entering judgment for the government.

---

[1] Judgment was actually entered for $1,560,235.45, which includes interest from the date of the assessment. Plaintiff did not contest this figure below, nor does he contest it in this appeal.

The district court recounted the following basic facts in its opinion granting the

Rule 50 motion:

> Plaintiff was an incorporator of Lorac, Inc., an employee leasing business. Initially he was one of the company's vice-presidents, and his main responsibility was sales and "growing" the business. He had limited authority to hire and fire employees, to determine financial policy, to set salaries and wages, to pay employees, and to enter loan agreements on Lorac's behalf. He opened bank accounts for Lorac with People's Bank in Dothan, Alabama, and was a signatory on those accounts with the ability to write checks under his sole signature for amounts up to $750. Lorac had two different kinds of checks: Checks that expressly required two signatures for amounts above $750, and checks that did not. On at least three occasions, Plaintiff wrote checks for more than $750 under his sole signature on Lorac checks that did not expressly require two signatures [checks in the amount of $1,000, $923.04 and $45,000]. The evidence at trial did not show that those checks were not honored, and conclusively proved that at least one such check was honored [entered into evidence along with the bank statement indicating that the check was cashed and honored]. Further, Plaintiff also had the authority to sign Lorac's Form 941 withholding tax returns, and he did so for the third and fourth quarters of 1995.
>
> In the spring of 1995, Plaintiff purchased a 24% stake in Lorac from its sole shareholder, Garner Umphrey, for $288. Umphrey, however, did not cash the check that Plaintiff used to pay him. At some point before the bankruptcy, Plaintiff also became the president of Lorac.
>
> Plaintiff testified at trial that he knew during the entire period at issue in this suit that a responsible person has a duty under the law to assure that withholding taxes are remitted to the United States. And he testified that as of August 28, 1995[,] he was aware that Lorac had failed to remit withholding taxes to the United States, and that, in October 1995, he became aware of the full amount of withholding taxes that Lorac owed.
>
> The undisputed evidence showed that after Plaintiff became aware that Lorac owed withholding taxes to the government and after he became aware of the full amount of the taxes that were owed, he continued to write check after check to other creditors under his

4

signature alone, including checks to Tack and So Forth, Inc. (a joint venture of Lorac and Plaintiff's wife) [for $1,000, dated October 18, 2001], himself [for $280, dated October 20, 1995], Builder's Cash and Carry [for $923, dated October 13, 1995], and Garner Insurance Agency [for $45,000, dated October 13, 2001].

*Thosteson v. United States*, 182 F. Supp. 2d 1189, 1191-92 (M.D. Ala. 2001) (notes omitted).

On appeal, Thosteson emphasizes the role of Garner Umphrey, who has also been sued by the government but has disappeared. He describes their relationship as beginning in the late 1980's through Umphrey's uncle, who attended Thosteson's church. In 1993, Umphrey approached Thosteson about starting an employee leasing business in the civilian context. Umphrey was already involved in employee leasing on behalf of military contractors. Thosteson claims that he originally had no related experience or background, but he educated himself in the computer program area of the business and proceeded to build the company through sales and marketing. He credits his sales and marketing efforts in late 1994 and early 1995 for making the new business become very successful. During 1995, the company had between four thousand and five thousand employees.

Nevertheless, Thosteson claims that Umphrey was not only the sole stockholder up through April 1995, but he and his wife also controlled all major decisions within the business. He alleges that Umphrey started diverting money from the company into

his other business enterprises, and these alleged transfers amounted to hundreds of thousands of dollars.

Regarding the taxes, Thosteson claims that he was not aware of the corporation's failure to pay them until August 28, 1995. He alleges that he was hospitalized when he found out that the taxes had not been paid. Further, after finding out about the tax arrears in August 1995, even though not knowing the amounts of those arrearages, he used his best efforts to try to establish a repayment plan. Thosteson testified that on August 28, 1995, he confronted Umphrey's wife and confirmed with her that the company had substantial overdue payroll tax liabilities. Thereafter, he arranged for Lorac to make weekly payments of $30,000 to the IRS. Thosteson and Umphrey's wife signed three checks for $30,000 on an account of the company, payable to the IRS, and dated August 31, September 6 and September 15, 1995. He alleges that his efforts were frustrated by Umphrey who contradicted his orders and stopped the tax restitution payments. Thosteson does not deny, however, that he knew Umphrey ordered the payments to cease. He claims that he continued to use his best efforts to make the business successful because based on his meeting with Lorac's bookkeeper, he felt that if they continued with the business, then the taxes could be successfully repaid. Thosteson signed the payroll tax return for the third and fourth quarters of 1995.

He testified that in November 1995, he became the president of Lorac through Umphrey's consent and in order to formulate a Chapter 11 bankruptcy plan to repay the taxes and keep the business going. The company's original petition for reorganization eventually converted to a Chapter 7 liquidation case, and the company went out of business in 1997.

The principal service offered by Lorac to its clients, in addition to volume discounts for workers compensation insurance, was relief from the paperwork of handling payroll, including the filing of federal employment tax returns and the payment of those taxes. The client's employees became employees of Lorac for purposes of payroll processing and payroll taxes.

## II.

We review *de novo* a district court's grant of judgment as a matter of law under Rule 50, applying the same standards as the district court. *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000). We consider whether such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that one party must prevail as a matter of law. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (*en banc*). Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that

"reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)).

## III.

Section 6672 imposes liability upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes.[2] *See Williams v. United States*, 931 F.2d 805, 810, *reh'g granted and opinion supplemented*, 939 F.2d 915 (11th Cir. 1991).

### A.    Allocation of the Burden of Proof

In tax refund cases, the burden of proof is on the plaintiff to show that the IRS's findings in assessing a deficiency are incorrect because its "deficiency determinations are presumed correct." *Trucks, Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir.

---

[2] Section 6672 provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title [Title 26 of the United States Code] who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

8

2000) (citing *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985)). Specifically in the context of § 6672 cases, however, we have held that "[o]nce an individual is established as a 'responsible person,' the burden shifts to the individual to disprove willfulness." *Malloy v. United States*, 17 F.3d 329, 331 (11th Cir. 1994); *see also Williams*, 931 F.2d at 810 (same). The district court observed that though we have allocated to the taxpayer the burden of disproving willfulness, we have "not directly decided who bears the burden of proof on the issue of whether a taxpayer is a responsible person . . . ." The district court, nevertheless, concluded that it "need not reach that issue here because both parties have agreed that the taxpayer in this suit bears the burden of showing that he was not a responsible person." We agree that the government would prevail under either standard, but we disagree that the taxpayer bears the burden of showing that he was not a responsible person.

In *Malloy*, using "is established" with regard to responsibility coupled with "the burden shifts" to the taxpayer logically refers to the government as bearing the burden on the issue of responsibility. Therefore, to the extent this burden was not clear after *Malloy*, we clarify the standard in this regard to be that once the government satisfies its burden in establishing a taxpayer as a "responsible person," the burden shifts to the taxpayer to disprove his willfulness in order to avoid liability.

**B.** **"Responsible" Person**

A person is responsible within the meaning of § 6672 if he has a duty to collect, account for, or pay over taxes withheld from the wages of a company's employees. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987). Responsibility is a matter of status, duty and authority, not knowledge. *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir. 1979).[3] Section 6672 responsibility is a matter of the power and authority to make payment of withholding taxes, which is not dispositively determined by corporate title or position. *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978). "Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *George v. United States*, 819 F.2d 1008, 1011 (11th Cir. 1987).

In the case at bar, the government has met its burden by presenting overwhelming evidence as to all of the mentioned indicia of responsibility. Thosteson vehmently argues that Umphrey was the responsible person. However, a company may have more than one responsible person within the meaning of § 6672. *Thibodeau*, 828 F.2d at 1503. Because Umphrey was responsible does not absolve

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

Thosteson of responsibility. Thosteson helped incorporate Lorac, served as vice-president and president, owned varying levels of stock in Lorac from 24% to 100%, and possessed the authority to hire and fire. It is logical that a vice-president who was also a significant shareholder would be a responsible person under the statute.

Furthermore, the government's point that Thosteson admits to being in charge of marketing is well taken. The principal benefit to this employee leasing arrangement, which Lorac's marketing materials stressed, is the tax and administrative savings, and much of the administrative savings has to do with tax-related payroll deductions and withholdings.

Thosteson's principal argument as to the limits of his authority and "responsibility" under § 6672 relates to his claim that he had limited check writing authority, up to only $750, without a countersignature of Umphrey or his wife. In dispensing with this same argument, the Fifth Circuit observed: "[Plaintiff] also argues that he did not have the actual authority to pay the entire tax bill because his check writing authority was limited to relatively small amounts. . . . [but] [t]he Internal Revenue Service would certainly not have objected to payment of the tax deficiency by several small checks." *Gustin v. I.R.S.*, 876 F.2d 485, 492 (5th Cir. 1989). We agree. Thus, even presuming the limitations on his authority imposed by Umphrey and ignoring the overwhelming evidence presented by the government to the contrary,

11

this would not remove his "responsibility" under § 6672. Therefore, the finding that Thosteson was a "responsible" person as a matter of law was not erroneous. The government has more than met its burden here.

## C.    Willful Failure

Turning to the requirement of willfulness, this court has held that the willfulness requirement of § 6672 is satisfied if the responsible person has knowledge of payments to other creditors after he becomes aware of the failure to remit the withheld taxes. *Williams*, 931 F.2d at 810 (citing *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990) and *Thibodeau*, 828 F.2d at 1505). Willfulness, however, "does not require a fraudulent or other bad motive on the part of the responsible person." *Id.* (citing *Hewitt v. United States*, 377 F.2d 921, 924 (5th Cir. 1967)).

Thosteson admits that he became aware of the trust fund arrearages on August 28, 1995. He claims, however, that Umphrey ordered the suspension of the $30,000 weekly repayment schedule. Nevertheless, the "Nuremburg defense," as some courts have referred to it, is not available to Thosteson. *See Brounstein v. United States*, 979 F.2d 952, 956 n.5 (3d Cir. 1992) (discussing and dismissing "Nuremburg defense," holding it is no defense that taxpayer "served only as a nominal president whose signature constituted a mere 'rubber stamp' for [principal shareholder-director's]

12

decisions" and "instructions from a superior not to pay taxes do not . . . take a person otherwise responsible . . . out of that category"); *Roth v. United States*, 779 F.2d 1567 (11th Cir. 1986) (holding vice president and minority shareholder who handled day-to-day operations and wrote corporate checks was a responsible person even though the president had instructed him not to pay the government).[4] Thosteson knew that the taxes were owed and that they were not being paid under Umphrey's order. Acting, or rather failing to act, under orders from his superior does not negate his culpability under the statute.

Thosteson admits that he became the undisputed president of the company, with concomitant authority, at the beginning of November, prior to the filing of bankruptcy. He was aware of the arrearages, and after he became aware of this

---

[4] *See also Gephart v. United States*, 818 F.2d 469 (6th Cir. 1987) (holding nonshareholder general manager was a responsible person, notwithstanding testimony that major shareholder had told him it was none of his business that withheld taxes were not being paid); *Howard v. United States*, 711 F.2d 729 (5th Cir. 1983) (holding director and treasurer of corporation, who had signatory authority over main corporate checking account, was a responsible person even though chief executive officer upon hearing of payment to IRS had ordered plaintiff not to pay IRS any more money and subsequently suspended him for several weeks; after resigning in part based on company's failure to remit the taxes, plaintiff notified IRS of corporation's unpaid taxes, but though corporation then had substantial assets, when IRS sought to collect taxes more than two years later, it had none); *Greenberg v. United States*, 46 F.3d 239 (3d Cir. 1994) (holding controller was a responsible person even though the chief executive officer ordered him not to pay trust fund taxes, and he believed that if he issued a check for the taxes, it would bounce and he would be fired).

13

deficiency, he still issued 262 checks to various creditors and others, including himself and his wife's company. Even if a "responsible" person is unaware that withholding taxes have gone unpaid in past quarters, a responsible person who becomes aware that taxes have gone unpaid in past quarters in which he was also a responsible person, is under a duty to use all "unencumbered funds" available to the corporation to pay those back taxes. *Mazo*, 591 F.2d at 1157; *see also United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997) (same); *Honey v. United States*, 963 F.2d 1083, 1089 (8th Cir. 1992) (same). This duty extends not only to funds available to the corporation at the time the responsible person becomes aware but also to any unencumbered funds acquired thereafter. If the responsible person fails to use such unencumbered funds to satisfy the past unpaid liability, he is deemed personally liable for the taxes that went unpaid in the past while he was responsible. The responsible person deemed liable for the unpaid liability of past tax quarters is considered to have "willfully" failed to pay over the taxes for those past quarters, even though he was unaware at that time that the taxes were going unpaid. *Mazo*, 591 F.2d at 1157. Even giving Thosteson the benefit of the doubt, that he was merely paying other creditors in order to keep the company going and preserve its ability to repay the tax debt, he is still liable under the law of this Circuit.

14

**D.     Reasonable Cause**

Finally, Thosteson raises the putative defense of "reasonable cause." *See, e.g.,*

*Finley v. United States*, 123 F.3d 1342 (10th Cir. 1997) (reasonable cause sufficient

to excuse a responsible person's failure to pay withholding taxes occurs in

circumstances where (1) the taxpayer has made reasonable efforts to protect the trust

funds, but (2) those efforts have been frustrated by circumstances outside the

taxpayer's control).   This Circuit has not yet addressed whether a defense of

"reasonable cause" can avoid a finding of willfulness in this context.  We decline,

however, to address this issue today.  Such defense as applied by other circuits would

still not be applicable under the facts of this case for the same reasons set forth by the

Fifth Circuit in addressing a similar situation:

> We have consistently held that the reasonable cause defense to a
> § 6672 action is exceedingly limited.  In *Bowen v. U.S.*, 836 F.2d 965,
> 968 (5th Cir. 1988), we stated that "[a]lthough we have recognized
> conceptually that a reasonable cause may militate against a finding of
> willfulness, no taxpayer has yet carried that pail up the hill." *See also*
> *Newsome v. U.S.*, 431 F.2d 742, 747 (5th Cir. 1970).  No such defense
> may be asserted by a responsible person who knew that the withholding
> taxes were due, but who made a conscious decision to use corporate
> funds to pay creditors other than the government. *Newsome*, 431 F.2d
> at 747 n.11; *Frazier v. U.S.*, 304 F.2d 528, 530 (5th Cir. 1962).
>      Here, [plaintiff] consciously decided to make payments to
> creditors other than the government even though he knew that the
> withholding taxes had not been paid. The facts [plaintiff] relied on were
> not sufficient to support a reasonable cause defense.

*Logal v. United States*, 195 F.3d 229, 233 (5th Cir. 1999); *cf. Finley*, 123 F.3d at 1342 (finding potential "reasonable cause" where as soon as individual determined that taxes were owed, ordered subordinate to pay the taxes without reason to doubt that subordinate would do so, and subordinate did not pay the taxes; when the failure was discovered, no unencumbered funds were available to pay the liability).

**IV.**

We do not quarrel with Thosteson's contention that Umphrey is the more culpable party, but even so conceding, being less culpable does not exonerate Thosteson from his responsibility, which he knowingly disregarded. As we have observed, "[t]he seeds of common sense compassion sown by the jury find scant hospitality on this rock hard legal landscape." *Williams*, 931 F.2d at 811. The district court did not err in setting aside of the jury's verdict and granting judgment as a matter of law to the government.[5]     AFFIRMED.

---

[5] Thosteson's assignment of error relating to the court's response to the jury's question is mooted by our finding that judgment as a matter of law was not in error. Likewise, there is no merit to his claim that the grant of the judgment as a matter of law denied him his right to a jury trial.