[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14649

_____

D.C. Docket No. 3:12-cv-00494-HLA-MCR

ASHLEY SCOTT,

Plaintiff-Counter Defendant-Appellant,

versus

UNITED STATES OF AMERICA, TREASURY,
DEPARTMENT, INTERNAL REVENUE SERVICE,

Defendant-Third Party Plaintiff-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 14, 2016)

Before TJOFLAT, ROSENBAUM, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This case presents the issue of whether Ashley Scott ("Scott") is a "responsible person" under 26 U.S.C. § 6672.[1]  A responsible person is required to pay over to the Internal Revenue Service trust fund taxes – i.e., taxes withheld by a business from employees' wages.  The district court granted partial summary judgment for the Government, holding that Scott was a responsible person.  Scott's primary argument on appeal is that the district court erred in that regard.  A responsible person is personally liable if she acted willfully in failing to pay over the trust fund taxes.  The district court also granted partial summary judgment in favor of the Government on the willfulness issue with respect to the 2007 quarters, but submitted the willfulness issue to the jury with respect to the other quarters at issue.  Scott also appeals the willfulness issues, and urges us to vacate the jury's finding that she acted willfully.  We first address the responsible person issue, and then the willfulness issues.

---

[1]     Section 6672(a) provides:
>    Any person required to collect, truthfully account for, and pay over
>    any tax imposed by this title who willfully fails to collect such tax,
>    or truthfully account for and pay over such tax, or willfully
>    attempts in any manner to evade or defeat any such tax or the
>    payment thereof, shall, in addition to other penalties provided by
>    law, be liable to a penalty equal to the total amount of the tax
>    evaded, or not collected, or not accounted for and paid over.

26 U.S.C. 6672(a).

The caselaw has described the "person required to collect, truthfully account for, and pay over any tax imposed by this title" as a "responsible person."

# I. FACTS AND PROCEDURAL HISTORY[2]

Appellant Ashley Scott worked for her father's business, Scott Air, beginning shortly after her graduation from high school in 1995 until its closing in 2008.  At the beginning, Scott worked full-time, for an hourly wage.  Later, she began to receive a salary and her hours decreased as she went back to school, took many trips, and traveled often to see a band.  Scott's father, Tyrene Scott, who owned all of the stock in the company, made her secretary of the company in 1999 without her knowledge or consent; her brother Ryan was also added as vice president of the company, unbeknownst to him.  Ryan began working for Scott Air in 1998 and continued working for it until its demise; he never dealt with office matters and instead worked in the field.  He did, however, sign occasional checks, but only if their father or Scott was unavailable.

Within the company, Scott's role was very limited.  She did not make financial decisions or authorize the payment of any bills to vendors or creditors; she did not open or close bank accounts, or otherwise perform banking functions; she did not guarantee or co-sign loans; and she did not hire or fire employees.  She wrote checks when directed to by her father, to buy office supplies, or to give

---

[2]    Because this appeal turns on the responsible person issue, which the district court resolved on summary judgment, we resolve all reasonable inferences of fact in favor of Scott. Thus, the facts assumed in this opinion are facts that a reasonable jury could find.

herself advances on her salary. Although she signed the payroll checks, she did not authorize or compile the payroll information. Although Scott did sign two Forms 941 (Employer's Quarterly Federal Tax Return) in 2005 and 2006, she did not recall doing so and states that she only did so because her father was out of town.

Scott Air did well from 2000 to 2004. It provided cell phones and vehicles for Scott, some of the other employees, and even non-employees. But by late 2004 or early 2005, the company began to have financial troubles and began to fail to pay its payroll taxes. Bank records reveal that although Scott Air had money in its accounts, it did not have enough to pay employees, vendors, expenses, and taxes. Although the company filed all of the required quarterly Forms 941 reporting the taxes withheld from employees, it opted to not pay the payroll taxes. The company ultimately closed its doors in 2008, and thereafter Scott and her brother opened a similar business.

On October 22, 2010, the IRS assessed Trust Fund Recovery Penalty ("TFRP") taxes against Scott for quarters covering the period March 31, 2004, through December 31, 2007. Scott responded by sending 13 Forms 843 (Claim for Refund and Request for Abatement) with a check for $300 that paid the taxes owed for one employee. She then filed suit against the IRS, the United States, and Michael Jenkins, the former manager at Scott Air. She sought a refund of the $300

4

plus an adjudication that she was not responsible or if she were deemed the responsible person, contribution from other responsible persons. The Government responded by counterclaiming for the full amount and filing a Third-Party Complaint against Scott's father. The district court dismissed Jenkins and granted the Government's partial summary judgment motion, holding that Scott was a responsible party for all thirteen quarters and was willful with respect to the 2007 quarters, but leaving for later jury determination whether Scott was willful in the earlier period. Scott filed for reconsideration and for interlocutory appeal, both of which the district court denied. After a three-day trial, the jury found Scott willfully failed to pay for 6 of the 9 quarters at issue.

## II. STANDARD OF REVIEW

We review the district court's order granting summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences" in favor of the non-moving party. Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

III. DISCUSSION

A.  Are There Genuine Issues of Material Fact on the Responsible Person Issue?

TFRP taxes are not a penalty but a statutory means for the IRS to pursue trust fund taxes, i.e., those that employers withhold and pay directly to the government.  Under the governing statute, § 6672, a person responsible for paying the taxes is personally liable if he has "willfully failed to perform a duty to collect, account for, or pay over federal employment taxes." Thosteson v. United States, 331 F.3d 1294, 1298-99 (11th Cir. 2003) (citing 26 U.S.C. § 6672).  The Code defines the person responsible for paying as "including an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671.  We have interpreted the statute broadly, Smith v. United States, 894 F.2d 1549, 1553 (11th Cir. 1990), and have stated that responsibility is "a matter of status, duty, and authority," Mazo v. United States, 591 F.2d 1151, 1156 (5th Cir. 1979).[3]  We have further stated that "[i]ndicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire

---

[3]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

and fire employees." George v. United States, 819 F.2d 1008, 1011 (11th Cir. 1987). The essential question is whether the person had sufficient control over corporate affairs to avoid non-payment of the employment taxes. Id.

Our cases addressing what constitutes responsibility are necessarily fact-intensive. The issue of liability as a responsible person is a mixed issue of law and fact, and one with respect to which a party is entitled to summary judgment only if there are no genuine issues of material fact. Jay v. United States, 865 F.2d 1175, 1079 (10th Cir. 1989).[4] All of our cases involve facts that are far more clearcut than those found here. For instance, in United States v. Thosteson, the alleged responsible person helped incorporate the company, served as both vice president and president, owned initially 24 percent and then 100 percent of the stock, and possessed the authority to hire and fire. 331 F.3d at 1299. Additionally, the person was able to write checks without a co-signer up to $750. Id. Finally we also noted that the taxpayer was especially knowledgeable about the payment of withholding taxes because the company provided employee leasing, explicitly offering the service so that the leasing employer would not have to handle withholding taxes. Id.

---

[4]    Eleventh Circuit cases assume without explicitly stating that the issue is a mixed question of law and fact. See, e.g., Thibodeau v. United States, 828 F.2d 1499, 1503 (11th Cir. 1987), and Mazo v. United States, 591 F.2d 1151, 1156 (5th Cir. 1979).

7

In Mazo v. United States, the taxpayers were all director-officers-stockholders or their manager, who all had the authority to sign checks on the regular business account. 891 F.2d at 1155. The manager and directors had complete control of the affairs of the company while the manager signed most of the checks from the payroll and salvage account. Id. at 1155-56. And, in Williams v. United States, 931 F.2d 805, 810 (11th Cir. 1991), we held the taxpayer was a responsible person when he was the president and chief operating officer, had check-writing authority, owned 50 percent of the corporation during one quarter at issue and 100% during the other, and had control over and supervised all of the corporation's daily operations. See also Brown v. United States, 591 F.2d 1136 (5th Cir. 1979) (holding taxpayers were responsible because they managed the daily operations of the corporation, owned half of the stock, had check-writing authority, and personally guaranteed the corporation's debts).

Cases have rejected the taxpayers' defense that they lacked responsibility for paying the taxes because they had been directed by the company's owner not to pay them. In Roth v. United States, 779 F.2d 1567 (11th Cir. 1986), the taxpayer was executive vice president, hired employees, signed payroll checks, paid most of the bills, had signature authority on all of the company's checking accounts, signed for the company's mortgage, had an option to buy up to 50 percent of the corporate stock, made contracts, and handled the company's day-to-day operations. Id. at

8

1569. He asserted that Dobbins, the chief executive officer, president, and majority owner, had ordered him not to the pay the withholding taxes to the government, stripping him of responsibility. We rejected this defense. Although the district court had reasoned that using the corporation's funds contrary to the president's instructions was tantamount to embezzlement, we rejected that argument because the funds were held in trust for the government and no longer belonged to the company. Id. We held in Roth:

> Roth once having become an "otherwise responsible
> person" to pay over the taxes became obligated by statute
> to pay these funds to the Internal Revenue Service. He
> was under no obligations to obey instructions from his
> corporate supervisor not to do so.

Id. at 1572.

Similarly, in Thibodeau v. United States, 828 F.2d 1499 (11th Cir. 1987), the taxpayer argued he was not a responsible person because while he ostensibly had authority, he was controlled by the owner of the company. We rejected that argument because the taxpayer was "the person responsible for selling, securing contracts, running the office, arranging for financing, and some hiring & firing." Id. at 1502 (internal punctuation omitted). Further, as president, he directed the company's bookkeeper to draw checks, and had the authority to and did sign checks. And although the taxpayer testified that the company's owner told him to keep the corporation running and pay the wages and debts, id. at 1503, we noted

9

that the taxpayer knew more about the daily operations of the corporation because he was the one on-site, id. at 1504. Thus, the taxpayer had the requisite authority and to the extent that the company's owner told him not to pay the taxes, we had already rejected that defense in Roth. Id. at 1504-05 (citing Roth, 779 F.2d at 1567, and finding that Roth was indistinguishable).

The Tenth Circuit declined to extend the rule announced in Roth to facts that were not as clearcut. In Jay v. United States, 865 F.2d 1175 (10th Cir. 1989), the taxpayer worked as comptroller for the corporation, possessing checkwriting authority but serving neither as officer nor director; he also did not own any interest in the corporation. The taxpayer was aware of the policy decisions by the corporation's executives and paid bills to creditors from the same account that held the funds withheld from the employees' wages. Although the taxpayer paid the bills, all decisions on which bills to pay were made by the corporation's president. 865 F.2d at 1177. The court noted that the taxpayer did not have authority to pay all bills and was not given generalized instructions about which bills to pay, as was the taxpayer in Roth. Id. at 1179. Because the court thought there were issues of fact and credibility, it vacated the district court's summary judgment in favor of the government and remanded for trial. Id.

We hold that this case is also too close to be decided on summary judgment. A reasonable jury could find that Scott did not have any authority to decide which

10

bills were to be paid.  Scott testified that her father kept the checkbook in his office or on him; he testified that he would call her when he was out of the office to pay certain bills.  There was evidence that she would buy office supplies on her own and paid the vet bills of the "office cat."  Similarly, the evidence supports a finding that her handling of the payroll was purely clerical: other office workers entered the data and manager Michael Jenkins verified the hours.  Scott and others testified that Scott merely loaded the checks into the printer, pushed print, and signed the checks.

A reasonable jury could find that, although Scott had signature authority with respect to the bank account, her authority to write checks was limited to the payroll (in amounts approved by the general manager and employees working under him), and related checks (e.g., for withholdings for child support of employees or pursuant to IRS levies on employees' salaries), plus checks for routine expenditures, and that other checks that she wrote were at the direction of her father.  A reasonable jury could also find that Scott had no significant duties or authority with respect to payroll tax withholding, with respect to the payment or failure to pay such taxes or with respect to the preparation and filing of the Forms 941.[5]

---

[5]    For example, a reasonable jury could find that others prepared the Forms 941 (the outside accountant prior to 2007 and Scott's father for 2007), and that with respect to the 2007 forms,

11

The evidence, viewed in the light most favorable to Scott, also would support a finding that although she was in name the corporate secretary of Scott Air, she did not enjoy any of its privileges or responsibilities. There was evidence that Tyrene Scott did not trust his manager, Michael Jenkins, with checkwriting authority, so he named his children officers so they could write checks in his absence. However, there is no evidence that the officers ever convened, and Scott was never asked to prepare minutes or perform other functions associated with officer status. Finally, all former employees plus Scott testified that she worked very few hours, and usually only a few days per week. None testified that she controlled finances or made decisions regarding money at the company.

But there is also evidence in the record that supports the Government's argument that Scott was a responsible person, such as the fact that she was the contact person for the outside accounting firm used by Scott Air and her ability to write checks for herself.[6] Scott did sign two of the Forms 941, from which a jury

she merely was asked to copy over the content which her father had calculated and inserted into the form so as to make the forms more legible, which forms her father then signed. With respect to the pre-2007 Forms 941, which were prepared by the outside accountant, although it is true that she signed one of the four forms for 2005 and one for 2006, a reasonable jury could find that she did so at the direction of her father and merely because he was unavailable at the time.

[6]     However, she testified such checks were only advances on her salary.

12

could find that she read them and understands more than she pretends.[7]  Also, the jury could discredit the testimony from the several witnesses concerning her limited authority with respect to signing checks and paying non-routine expenses. Some witnesses testified that Scott's desk was located in her father's office, from which a jury could find that she knew more about the company's spending and finances than she pretends.  However, such evidence favoring the Government merely means that there are issues of fact which must be decided by the jury.

We conclude that the instant case is distinguishable from Roth.  First, in this case, the jury may well make findings such that Scott never became a responsible person.  Thus, the Roth holding is distinguishable, because it involved a person who had already become an "otherwise responsible person."  Roth, 779 F.2d at 1572.  Second, and significantly, the Roth case involved a discrete, specific instruction to the taxpayer not to pay the IRS, without any other limitation on the taxpayer's general authority to sign checks or to pay bills.  By contrast, in this case, the jury may well find that the limitation on Scott's authority was a general limitation, entirely unrelated to the payment of payroll taxes.  The jury may well find that Scott's authority to write checks was limited to specific categories of

---

[7]    Although evidence from Scott's father supports a possible jury finding that Scott merely copied over from her father's drafts the 2007 Forms 941, see supra n.5, the jury might disbelieve her father on the basis of testimony from Scott that tended to contradict her father, suggesting that she may have entered the content for the forms from information on the computer.

routine, recurring expenses, and that any checks for non-routine matters, or for larger amounts, were either written by Scott's father or by her at his direction.

Because there are genuine issues of material fact relevant to whether Scott was a responsible person under § 6672, we vacate the district court's grant of partial summary judgment.

B.  Willfulness Issue

Although Scott's initial brief on appeal appears to challenge the jury's finding of willfulness with respect to several of the pre-2007 quarters, her reply brief disavows any such challenge.[8]  She clarifies that she intends on appeal to challenge only the district court's denial of her motion for partial summary judgment urging the district court to hold as a matter of law that Scott was not willful.  We reject this argument of Scott.  We "will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits." Lind v. United Parcel Serv., 254 F.3d 1281, 1286 (11th Cir. 2001).  We also reject Scott's challenge to the district court's grant of summary judgment on the issue of

---

[8]    As the Government points out, Scott failed to properly preserve the issue for review.  She failed in the district court to file a motion for judgment as a matter of law, and thus did not preserve the issue.  Further, she failed to order the entire trial transcript for the appeal.  Nor did Scott preserve an objection to the Government's motion in limine that precluded her from re-litigating before the jury the responsible person issue.

Scott's willfulness with respect to the 2007 quarters.  Thus we reject all of Scott's

challenges on appeal to the willfulness rulings below.

Although we affirm for the reasons noted above on the willfulness issues, we

vacate on the responsible person issue.

AFFIRMED in PART, VACATED and REMANDED in PART