[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13098

_____

ASHLEY C. SCOTT,

Plaintiff- Counter Defendant Appellant,

*versus*

UNITED STATES OF AMERICA, TREASURY DEPARTMENT,
INTERNAL REVENUE SERVICE,

Defendant-Third Party Plaintiff – Counter
Claimant Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:12-cv-00494-BJD-MCR

———————————

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

This case is on its third trip to our Court.  In the most recent round in the district court, the court held a jury trial on whether Defendant-Appellant Ashley Scott had sufficient control over her father's company to have been able to avoid the company's non-payment of its payroll taxes.  The jury found that she did.  Because we cannot conclude that no rational trier of fact could have reached that same conclusion based on the evidence in the record, and because we cannot conclude that the district court abused its discretion by denying Scott's motion for a new trial, we affirm.

## I.

Because we are reviewing the sufficiency of the evidence supporting the jury's verdict, we set forth the facts in the light most favorable to the verdict. *See Mamani v. Sánchez Bustamante*, 968 F.3d 1216, 1230 (11th Cir. 2020); *see also Insurance Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991) ("[W]hen a new trial is sought on the basis that the verdict is against the weight of the evidence, our review is particularly stringent to protect the litigant's right to a jury trial.").

Scott's father founded Scott Air in 1992.  The company specialized in servicing and installing heating and air-conditioning

units.  Within a decade after the company's founding, Scott had assumed the role of corporate secretary.

Scott also had a hand in the company's financial affairs, and she described herself as the company's "Accounting Manager" on her 2004 tax return.  Although Scott's father was generally responsible for paying major operating expenses, Scott sometimes stepped in to pay creditors.  Witnesses also described her as the "point person" for the company's outside accountant.  And the company's sole bank account listed her as one of three signatories (the other two were her father and brother).

Besides these responsibilities, Scott was in charge of the company's payroll.  Between 2004 and 2007, she signed most, if not all, the company's payroll checks.  And during that period, Scott withheld amounts from employees' wages as required and sent checks both to (1) the Florida Department of Revenue, thus satisfying some employees' child-support obligations, and (2) the Internal Revenue Service ("IRS"), thus satisfying a lien against another employee's wages.

But during that same period, the company stopped paying its payroll taxes to the IRS.  The IRS then invoked 26 U.S.C. § 6672, under which a person responsible for paying a company's payroll taxes can be held personally liable when those taxes go unpaid, to assess a penalty against Scott to the tune of $680,472.28.  That amount reflected the company's unpaid payroll taxes for thirteen quarters between 2004 and 2007.  In response to that assessment, Scott mailed the government a check for $300, covering the

amount owed by one employee for one quarter, and requested that the government abate the remainder of the assessment against her.

When the government failed to respond to Scott's request for an abatement of the penalty assessed against her, she sued. She sought a refund of the $300 and a declaration that she was not liable for the company's unpaid payroll taxes.

In its answer, the government asserted a counterclaim against Scott for the full amount of the assessment. The government then moved for partial summary judgment, arguing that Scott was a "responsible person" during all thirteen quarters between 2004 and 2007 and that she "willfully" failed to pay the company's taxes during all four quarters in 2007.

The district court granted the government's motion in full, leaving the jury to decide only whether Scott "willfully" failed to pay the company's payroll taxes during the remaining nine quarters (i.e., all quarters except for the four in 2007). After a three-day trial, the jury found that Scott willfully failed to pay the company's taxes for six of the nine quarters at issue.

Scott then appealed, arguing that the district court erred by granting summary judgment on both issues: (1) that Scott was a responsible person for all thirteen quarters between 2004 and 2007 and (2) that she willfully failed to pay taxes for all four quarters in 2007. *See Scott v. United States*, 825 F.3d 1275, 1277 (11th Cir. 2016). Although we affirmed the district court's order granting summary judgment on the willfulness issue, we reversed on the

responsible-person issue. Whether Scott was a responsible person during the thirteen quarters between 2004 and 2007, we held, was "too close to be decided on summary judgment." *Id.* at 1281. Still, we noted that "evidence in the record" would permit a jury to find "that Scott was a responsible person" during the thirteen quarters at issue. *Id.*

On remand, the district court held a second jury trial to determine whether Scott was a "responsible person" during the ten quarters for which her willfulness had already been determined. Although the jury concluded that Scott was not a responsible person during seven of those quarters, it also found that she was a responsible person during the third quarter of 2005, the fourth quarter of 2006, and the second quarter of 2007.

Scott appealed again, this time arguing that the district court erred by refusing to give a jury instruction she proposed. *See Scott v. United States*, 776 F. App'x 612, 613 (11th Cir. 2019). Once again, we agreed with Scott, holding that the district court's failure to give Scott's proposed jury instruction constituted plain error. *Id.*

On remand, the district court held a third jury trial. This time, the jury considered whether Scott was a responsible person during the third quarter of 2005, the fourth quarter of 2006, and the second quarter of 2007. The jury returned a verdict in the government's favor for the third quarter of 2005 and the fourth quarter of 2006, finding that Scott was a responsible person during those quarters. But the jury also returned a verdict in Scott's favor for the second quarter of 2007, finding that Scott was not a responsible

person during that quarter. Scott then renewed her motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and, in the alternative, moved for a new trial under Rule 59. She argued that "there was insufficient evidence presented to the jury upon which a reasonable or rational jury could determine that Scott was a 'responsible person.'" The district court denied both motions. Scott now appeals, reiterating her claim that the "record is devoid of any facts or indicia establishing responsibility."

## II.

We review de novo a district court's ruling on a renewed motion for judgment as a matter of law, applying the same standard as that court. *Mamani*, 968 F.3d at 1230. In so doing, we review the record in the light most favorable to the party that prevailed at trial, drawing all inferences in its favor. *Id.* We will overturn the jury's verdict only when "no rational trier of fact could have reached the same conclusion based upon the evidence in the record." *Id.* (quoting *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003)).

When a losing party moves for a new trial, on the other hand, we review the district court's denial of that motion for abuse of discretion. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254–55 (11th Cir. 2016). "Deference to the district court 'is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed.'" *Id.* (quoting *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247–48 (11th Cir. 2001)).

### III.

The Internal Revenue Code obliges employers to withhold funds for federal Social Security and income taxes from employees' paychecks. *See* 26 U.S.C. §§ 3102, 3402. That money "shall be held in a special fund in trust for the United States." *Id.* § 7501(a). When an employer fails to pay those trust-fund taxes, the IRS may assess a penalty against "(1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay" those trust-fund taxes. *Thosteson v. United States*, 331 F.3d 1294, 1299 (11th Cir. 2003) (citing 26 U.S.C. § 6672).

The second prong of that test is not at issue in this appeal. *See Scott*, 825 F.3d at 1282 (affirming the district court's order granting summary judgment, which found that Scott acted willfully during all four quarters in 2007, and the jury's verdict finding that Scott acted willfully during six of the nine remaining quarters). The only question we must answer is whether to disturb the jury's finding that Scott was a responsible person during the third quarter of 2005 and the fourth quarter of 2006.

Whether Scott was a responsible person during those quarters turns on whether she "had sufficient control over" Scott Air's "affairs to avoid non-payment of the employment taxes." *Id.* at 1279 (citation omitted). That test stems from our broad interpretation of the Internal Revenue Code, which "defines" a responsible person to include "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty" to pay the trust-fund taxes. *Id.*

(quoting 26 U.S.C. § 6671(b)).  From that language, we have discerned "that responsibility is 'a matter of status, duty, and authority.'" *Id.* (quoting *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir. 1979)).

This analysis is "necessarily fact-intensive." *Id.* For that reason, we determine whether a person is a responsible person "on a case-by-case basis." *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978).[1]  Factors that guide this inquiry "include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Scott*, 825 F.3d at 1279 (quoting *George v. United States*, 819 F.2d 1008, 1011 (11th Cir. 1987)).  No one factor is dispositive, and we "have generally taken a broad view of who constitutes a responsible person." *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990).  And "more than one person may be a responsible officer of the corporation under § 6672." *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987).

## IV.

Applying that analysis, we reject Scott's arguments that no rational trier of fact could find that Scott was a responsible person and that the district court abused its discretion by denying her motion for a new trial.  To begin with, the first factor—the holding of

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

corporate office—supports the jury's finding that Scott was a responsible person because Scott served as Scott Air's corporate secretary.  And while Scott argues that she "had no idea" what it meant to be a corporate secretary, Scott and her father were the only contact persons for the company's outside accountant.  Indeed, that accountant testified that he shared information with Scott that he would not share with any other employee at Scott Air. The accountant even notified Scott that the company owed payroll taxes several times between 2005 and 2007.  Because "responsibility is 'a matter of status, duty, and authority,'" *Scott*, 825 F.3d at 1279 (quoting *Mazo*, 591 F.2d at 1156), it's irrelevant that Scott "had no idea" what it meant to be a corporate secretary.  All that matters is that Scott's status, duty, and authority at Scott Air made her responsible—a conclusion supported by the fact that the accountant confided in her about company business.

The second and third factors—control over financial affairs and authority to disburse corporate funds—also support the jury's finding that Scott was a responsible person.  For starters, the record shows that Scott had discretionary authority to pay for some of the company's operating expenses.  Scott testified, for example, that she could shop for business supplies without first asking for her father's permission.  Those shopping runs cost anywhere from $200 to $1,000.  The company's general manager also testified about a time when he brought his phone bill to Scott, who then "made a determination" to pay that bill.  Another employee told a similar story about his own phone bill.  That employee also remembered

that Scott sometimes signed checks to pay the company's vendors. In fact, that employee remembered watching Scott and her father call the IRS together to pay the company's payroll taxes on at least one occasion.

On that score, Scott was in charge of the company's payroll. In that role, she input new employees' W-4 information—that is, the information that enables an employer to "withhold the correct federal income tax" from an employee's paycheck[2]—into the company's automated payroll system. But it was not just W-4 information that Scott plugged into that system. She also caused the system to account for, for example, employees' child-support orders, which the company received from the Florida Department of Revenue. Using all that information, the system then generated a report that stated the amounts to withhold from each employee's paycheck.

Sometimes, Scott paid that amount to the proper government agency. For instance, she used those computer-generated reports to withhold funds from employees' paychecks to cover their child-support obligations, before paying those funds to the Florida Department of Revenue. As Scott explained at trial, "when the payroll was done, I would write a check to [the Florida Department

---

[2] *About Form W-4, Employee's Withholding Certificate*, Internal Revenue Serv., https://www.irs.gov/forms-pubs/about-form-w-4 (last visited Oct. 31, 2022).

of Revenue] for the amount that that employee was due to pay in child support for the week."

The process for paying the company's payroll taxes was no different. Relying on the computer-generated reports and information from the company's accountant, Scott filled out and signed the company's payroll tax returns during the third quarter of 2005 and the fourth quarter of 2006. And on the same day that Scott signed the payroll tax return for the fourth quarter of 2006, she signed a check to the IRS to pay for the company's unemployment taxes. But Scott never signed a check to pay for the company's payroll taxes.

From that evidence, two facts emerge. First, Scott's testimony about writing checks to the Florida Department of Revenue proves that she "would write a check" (or at least that she could write a check) to the government when the computer-generated report displayed that a balance was due. That fact finds further support from Scott's testimony about writing a check to the IRS to satisfy the company's unemployment-tax obligations. Second, Scott signed the company's payroll tax returns during the third quarter of 2005 and the fourth quarter of 2006, proving that she knew a balance was due for those quarters. So the bottom line is the record contained evidence that Scott knew about the company's unpaid payroll taxes and failed to pay them, even though she wrote checks to satisfy similar obligations during the same time frame. And this evidence supports the jury's finding that Scott had

"sufficient control over" Scott Air's "affairs to avoid non-payment of the employment taxes." *Scott*, 825 F.3d at 1281.

The fourth factor—stock ownership—neither supports nor undermines the jury's verdict. In many cases, a responsible person owns stock in the company for which she is a responsible person. *See, e.g.*, *Thosteson*, 331 F.3d at 1298–99; *Williams v. United States*, 931 F.2d 805, 810 (11th Cir. 1991). Here, Scott's father owned all of Scott Air's stock. Yet while Scott held no stock in Scott Air, she did loan the company $20,000. And she also guaranteed a line of credit that one of the company's vendors extended. So while Scott never owned stock in Scott Air, she did have skin in the game. On balance, therefore, this factor is a wash.

The fifth factor is also a draw. A responsible person often has authority to hire and fire employees on the company's behalf. *See, e.g.*, *Roth v. United States*, 779 F.2d 1567, 1569 (11th Cir. 1986); *Thosteson*, 331 F.3d at 1299. Here, Scott's father testified that he never authorized Scott to hire or fire employees. That said, an employee testified that some employees reported to Scott.

To summarize, then, the evidence bearing on the first three factors—holding corporate office, controlling the company's finances, and possessing authority to disburse the company's funds—supports the jury's finding that Scott was a responsible person during the third quarter of 2005 and the fourth quarter of 2006. Even assuming that Scott's lack of stock ownership and power to hire and fire employees cut against the jury's verdict, it does not follow that no rational trier of fact could have concluded that Scott

20-13121                    Opinion of the Court                    13

was a responsible person during the third quarter in 2005 and the fourth quarter in 2006.  Nor does it follow that the jury's verdict was "against the great—not merely the greater—weight of the evidence." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948–49 (11th Cir. 2018) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)).  In short, the district court neither erred by denying Scott's renewed motion for judgment as a matter of law nor abused its discretion by denying her motion for a new trial.

## V.

For these reasons, the district court's judgment is affirmed.

**AFFIRMED.**